IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

WPA EMERGENCY MEDICINE
STAFFING, LLC, a Pennsylvania
limited liability company,

    *Plaintiff,*

v.

    Case No. _____
    Judge:

CATHERINE BOMBERGER, M.D., LLC,
a Georgia limited liability company,

    *Defendant.*

## COMPLAINT

Plaintiff WPA Emergency Medicine Staffing, LLC ("WPA"), for its Complaint against Defendant Catherine Bomberger, M.D., LLC ("Bomberger LLC") (collectively with the Plaintiff, the "Parties") states the following.

## INTRODUCTION

1. This Complaint arises out of Defendant Bomberger LLC's bad faith failure to make payments for work performed by Plaintiff WPA in violation of the Parties' Staffing Agreement (the "Staffing Agreement"), attached as Exhibit A, and the laws of equity. Bomberger LLC has failed to pay WPA for $73,577.50 in invoiced work despite several good faith efforts by WPA to seek payment without resorting to relief from this Court. Despite several demands, Bomberger LLC has failed to provide payment or even respond, resulting in an additional $14,655.44 to date in late fees pursuant to the terms of the Staffing Agreement. Bomberger LLC's continued failure to pay amounts to bad faith conduct in violation of Tennessee contractual and equitable law.

## PARTIES

2. Plaintiff WPA Emergency Medicine Staffing, LLC is a limited liability company based in Pennsylvania that specializes in medical staffing with a roster of retained independent contractor physicians, midlevels, and other medical personnel (collectively referred to as "providers"). *See* Ex. A, at 1. WPA's principal place of business is located at 178 Rolling Hills Road in Johnston, Pennsylvania 15905. WPA's sole owner and member resides in Pennsylvania.

3. Defendant Catherine Bomberger, M.D., LLC is a limited liability company based in Macon, Georgia which provides medical services through its facilities and retained physicians and other medical personnel. *Id.* Bomberger LLC's principal place of business is located at 310 Hospital Drive, Building B, Suite 315 in Macon, Georgia 31217. Upon information and belief, all members of Catherine Bomberger, M.D., LLC are residents of Georgia.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S. Code § 1332, as the amount in controversy exceeds the sum of $75,000, and there is diversity of citizenship among the parties.

5. Specifically, this action arises out of $73,577.50 in unpaid work that WPA has performed under the Staffing Agreement with Bomberger LLC. Further, the Staffing Agreement provides for late payments fees, which to date total $14,655.44, and an award of attorney's fees. Together with the unpaid invoices, the amount in controversy here well exceeds $75,000. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) ("As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." (citing *Clark v. Nat. Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975)).

6. Venue is proper pursuant to 28 U.S. Code § 1391, as the Staffing Agreement provides:

> [a]ny claim, dispute or controversy arising out of or in connection with this Agreement, or any breach thereof, shall be heard exclusively in the courts, state and federal, located in the County of Davidson, Tennessee, and each of the Parties to this Agreement expressly consents to the jurisdiction and venue of such courts.

Ex. A, at ¶ 7.12 (the "Forum Selection Clause").

7. This Court has personal jurisdiction over Bomberger LLC, as it consented to jurisdiction and venue pursuant the Staffing Agreement. Ex. A, at ¶ 7.12; *see also Porter Casino Resort, Inc. v. Ga. Gaming Inv., LLC*, No. 18-CV-2231-SHM-DKV, 2018 U.S. Dist. LEXIS 161832, at *13 (W.D. Tenn. Sept. 21, 2018) ("Tennessee courts applying Tennessee law have held that '[t]he issue of "minimum contacts" for long arm jurisdiction is pretermitted, because the requirement of minimum contacts is satisfied by a valid, enforceable forum selection agreements.'" (quoting *Cummings, Inc. v. H.I. Mayaguex, Inc.*, No. 01-A-01-9306-CH-00258, 1993 Tenn. App. LEXIS 643, at *2 (Tenn. Ct. App. Oct. 1, 1993) (other citations omitted))).

## FACTS

**The Staffing Agreement**

8. The purpose of the Staffing Agreement was for WPA to provide Bomberger LLC with "physicians and midlevels specializing in Emergency Medicine and other medical specialties to assist [Bomberger LLC] in staffing its medical department." Ex. A, at 1.

9. The Staffing Agreement obligated WPA to provide Bomberger LLC with properly-credentialed, qualified, and adequate staffing for Bomberger LLC's facility upon request. *See* Ex. A, at ¶ 1.02. Bomberger LLC was obligated under the Staffing Agreement to exclusively utilize WPA to provide its staffing and to accept and utilize the agreeable providers requested from and provided by WPA for the term of the Agreement, a one-year term beginning on January 16, 2023. Ex. A, at ¶¶ 2.01; 2.10; and 3.01.

10. The Staffing Agreement provides for direct payment to Bomberger LLC's facility for services offered to Bomberger LLC patients by WPA-supplied providers. Ex. A, at ¶ 1.14. In other words, Bomberger LLC billed patients for and received value from providers supplied by WPA pursuant to the Staffing Agreement, and WPA did not directly bill or receive payment from patients treated by WPA-supplied providers at Bomberger LLC's facility.

11. However, providers supplied to Bomberger LLC by WPA were independent contractors of, and therefore compensated by, WPA. Ex. A, at ¶ 5.01.

12. In return, Bomberger LLC, referred to in the agreement as "Client," was obligated under the Staffing Agreement to pay WPA, referred to in the agreement as "Contractor," for services provided by WPA-supplied providers according to the following provisions:

> **4.01 Payment for Contractor Services.** For the services provided pursuant to this Agreement, <u>Contractor shall be compensated for all services rendered hereunder</u> at the rate defined in Addendum 5, Addendum 6, and Addendum 7, measured in six-minute increments, and with a minimum billing of eighteen minutes per each service provided for less than sixty (60) minutes.
>
> **4.02 Timing of Invoices.** Unless otherwise agreed to by the Parties, invoices will be sent via email weekly or bi-weekly to the Client. Each Party shall promptly notify the other Party in writing of any billing errors of which such Party has knowledge. Contractor's account representative and Client's representative shall work with all due haste to reconcile any account billing discrepancies. <u>Client shall pay Contractor for Services the undisputed sum of each invoice within thirty (30) days of receipt of such invoice.</u> In the event that the total invoice amount is not timely paid, and is not in dispute, in addition to its other remedies Contactor may impose, and Client shall pay, a <u>late payment charge</u> equal to one and one-half percent (1.5%) of the overdue amount for each month payment is not received by the Contractor. Client shall furnish Contractor with documentation to support any disputed invoice.

Ex. A, at ¶¶ 4.01 and 4.02 (emphasis added).

13. Addendum 6 to the Staffing Agreement provides the Fee Schedule agreed to by both WPA and Bomberger LLC. Ex. A, at Adm. 6. The Fee Schedule establishes an hourly rate of

$165 per hour for physicians and $85 per hour for mid-levels to be paid by Bomberger LLC to WPA. *Id.*

14. Either WPA or Bomberger LLC could terminate the Staffing Agreement, with or without cause, so long as 90-days written notice was provided to the other party pursuant to the terms of the agreement. Ex. A, at ¶ 3.02. Alternatively, a breach of the Staffing Agreement by either WPA or Bomberger LLC provided grounds for termination, after a 30-day opportunity for the breaching party to cure. Ex. A, at ¶ 3.04.

15. The Staffing Agreement provides that it shall be governed by and construed under the laws of Tennessee, and the Staffing Agreement explicitly defines what constitutes a breach of the agreement:

> **3.05 Breach of Agreement.** A Party to this Agreement shall be considered in breach of this Agreement if any obligation, duty, or responsibility as outlined in any article, section, term, provision, or condition of this Agreement, or the addendum attached hereto and incorporated herein by reference, is not performed in the manner proscribed or within the stated time set for the performance of any such obligation, duty, or responsibility.

Ex. A, at ¶ 3.05.

16. The Staffing Agreement provides that notice shall be given to the breaching party. Ex. A, at ¶ 3.06.

17. The Staffing Agreement also awards enforcement costs, stating that "[i]n the event that any legal action is brought for the enforcement of this Agreement, or because of an alleged dispute or breach, the prevailing party shall be awarded its costs of suit and reasonable attorney's fees." Ex. A, at ¶ 7.04.

**Work Performed But Not Compensated**

18. WPA began performing services for Bomberger LLC pursuant to the Staffing Agreement beginning in January 2023. Bomberger LLC paid WPA's submitted invoices in

January and February 2023, but Bomberger LLC stopped making payments on invoices beginning in March 2023. WPA continued providing services to Bomberger LLC under the Staffing Agreement until mid-May 2023, despite continuing non-payment.

19. The unpaid invoices date from March 4, 2023 through May 15, 2023, attached as Exhibits B-L. Specifically, these unpaid invoices are for services provided by WPA to Bomberger LLC beginning in February 2023 and continuing through mid-May 2023. The invoices individually range from approximately $4,000 to $10,000 and account for staffing provided to Bomberger LLC by WPA through provider Ashley Poullard, M.D. The unpaid invoices collectively total $73,577.50, without assessing any late payment charge.

20. WPA notified Bomberger LLC of these overdue invoices and attempted contact with Bomberger LLC's Officer Manager, Michael Sullivan, several times to no avail. For example, WPA contacted Bomberger LLC via telephone on May 31, 2023 and via email on July 27, 2023 requesting payment on the $73,577.50 in overdue invoices. *E.g.*, Ex M.

21. On August 7, 2023, WPA sent a letter to Bomberger LLC notifying it of Bomberger LLC's breach of the Staffing Agreement and citing several overdue invoices totaling $73,577.50. Ex. N. This letter also provided Bomberger LLC with 30 days to cure the breach, in accordance with the term of the Staffing Agreement, after which the letter stated the Staffing Agreement would be terminated.

22. On August 31, 2023, WPA sent a second letter to Robert Matson, who upon information and belief represented Bomberger LLC during the sale of Bomberger LLC's practice. The August 31, 2023 letter notified Mr. Matson of the outstanding debt Bomberger LLC owed to WPA as a result of the unpaid invoices. Ex. O.

23. Bomberger LLC made no attempts to cure the overdue invoices nor did Bomberger LLC contact WPA to discuss the deficiencies.

24. On October 16, 2023, WPA, through separate counsel, sent a letter to counsel for Bomberger LLC confirming its failure to make payment on the overdue invoices and terminating the Staffing Agreement as a result of Bomberger LLC's failure to pay.

25. To date, Bomberger LLC has failed to make any payment to WPA relating to the overdue invoices nor has Bomberger LLC rejected WPA's invoices or provided any reason for withholding payment.

## COUNT I - BREACH OF CONTRACT

26. WPA adopts and incorporates all other provisions of this Complaint as if fully stated in this Count.

27. WPA and Bomberger LLC entered into a valid agreement, the Staffing Agreement, on January 26, 2023 which created enforceable obligations for each Party.

28. Specifically, WPA provided Bomberger LLC with adequate staffing for Bomberger LLC's medical facility from January 2023 through mid-May 2023.

29. Bomberger LLC had a contractual duty under the Staffing Agreement to pay WPA for services provided under the agreement.

30. Bomberger LLC, however, failed to pay WPA for services provided under the Staffing Agreement.

31. Bomberger LLC materially breached the Staffing Agreement by failing to make payments for invoices for work performed in February, March, April, and May of 2023. *See, e.g., Fitness & Ready Meals LLC v. Eat Well Nashville LLC*, No. M2021-00105-COA-R3-CV, 2022

Tenn. App. LEXIS 81, at *9-10 (Mar. 1, 2022); *see also Alpha Portland Cement Co v. Oliver*, 125 Tenn. 135, 138-139 (1911).

32. Bomberger LLC also materially breached the Staffing Agreement by causing the premature termination of the Staffing Agreement prior to the three year term agreed to by the Parties, depriving WPA of its contracted-for benefit.

33. Consequently, Bomberger LLC is liable to WPA for all costs and damages WPA incurred as a result of Bomberger LLC's breach of the Staffing Agreement, including $73,577.50 in unpaid invoices plus contractual late payment charges, interest, and attorneys' fees. *See Fitness & Ready Meals LLC v. Eat Well Nashville LLC*, No. M2021-00105-COA-R3-CV, 2022 Tenn. App. LEXIS 81, at *25-27 (Mar. 1, 2022) (awarding reasonable attorney fees in accordance with a contractual provision).

## COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

34. WPA adopts and incorporates all other provisions of this Complaint as if fully stated in this Count.

35. Tennessee law provides that every contract has an implied covenant of good faith and fair dealing. *Voya Ret. Inc. & Annuity Co. v. Johnson*, No. M2016-00435-COA-R3-CV, 2017 Tenn. App. LEXIS 716, at *12 (Oct. 27, 2017).

36. In refusing to pay WPA for work properly provided under the Staffing Agreement and invoiced, Bomberger LLC has breached its implied covenant of good faith and fair dealing and acted in a manner that frustrates WPA's right to receive the benefits as described in the Staffing Agreement.

37. Bomberger LLC also breached its implied covenant of good faith and fair dealing by causing the prematurely termination of the Staffing Agreement, prior to the three year term as agreed to by the Parties.

38. WPA is therefore entitled to all damages flowing from Bomberger LLC's breach of its implied covenant, including but not limited to compensatory and consequential damages.

## COUNT III – UNJUST ENRICHMENT/QUANTUM MERUIT/RESTITUTION

39. WPA adopts and incorporates all other provisions of this Complaint as if fully stated in this Count.

40. WPA provided valuable services to Bomberger LLC by supplying properly-credentialed, qualified, and adequate staffing for Bomberger LLC's facility upon request. *See* Ex. A, at ¶ 1.02.

41. Upon information and belief, Bomberger LLC received the benefit of payment for all work performed by the WPA-supplied provider.

42. Bomberger LLC reasonably understood that WPA expected to be compensated for performing its services under the Staffing Agreement.

43. It would be unjust for Bomberger LLC to retain the value of WPA's services under the Staffing Agreement without compensating WPA for its services.

44. As such, Bomberger LLC is liable to WPA for the costs incurred and services already provided to Bomberger LLC under the Staffing Agreement but not yet paid for by Bomberger LLC.

**WHEREFORE**, Plaintiff WPA Emergency Medicine Staffing, LLC prays for the following relief:

(A) That WPA be awarded damages against Defendant Catherine Bomberger, M.D., LLC that include the amount of $73,577.50 for past due services provided under the Staffing Agreement along with other compensatory and consequential damages;

(B) Trial by jury;

(C) That WPA be granted an award of attorneys' fees and costs of suit pursuant to § 7.04 of the Staffing Agreement;

(D) That WPA be granted its late payment charge, pursuant to § 4.02 of the Staffing Agreement, as well as pre-judgment and post-judgment interest;

(E) That, alternatively, WPA be awarded a Judgment against Bomberger LLC and damages for unjust enrichment in an amount to be proven at trial;

(F) That all costs be taxed to Bomberger LLC; and

(G) For such other general relief as this Honorable Court deems proper.

Respectfully submitted,

*/s/ J. Tanner Watkins*
J. Tanner Watkins (#039770)
DINSMORE & SHOHL LLP
101 S. Fifth Street
Suite 2500
Louisville, Kentucky 40202
Ph: (502) 540-2300
Fx: (502) 585-2207
tanner.watkins@dinsmore.com
*Counsel for WPA Emergency Medicine Staffing, LLC*